USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 10/15/2019

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
    :
DAMARIS RODRIGUEZ,    :
                                 Plaintiff,    :
    :    18 Civ. 0918 (LGS)(HBP)
                -against-    :
    :    <u>ORDER AND OPINION</u>
NANCY A. BERRYHILL,    :
Commissioner of Social Security,    :
                               Defendant.  :
    :
------------------------------------------------------------X

LORNA G. SCHOFIELD, District Judge:

    Plaintiff Damaris Rodriguez filed this action against the Commissioner (the "Commissioner") of the Social Security Administration (the "SSA") on February 1, 2018, seeking review of the final decision of an Administrative Law Judge ("ALJ") denying her benefits under the Social Security Act ("the Act"). Before the Court is the Report and Recommendation of Magistrate Judge Henry Pitman ("Report"), recommending that the Court deny Plaintiff's motion for summary judgment and grant the Commissioner's cross-motion for judgment on the pleadings. For the reasons stated below, the Report is adopted in its entirety, Plaintiff's motion is denied, the Commissioner's cross-motion is granted, and the case is dismissed.

**I.    BACKGROUND**

    The following facts are taken from the administrative record and the parties' submissions.

    **A.    Plaintiff's Medical History**

        **1.  Dr. Ali Guy**

    Plaintiff consulted with Dr. Ali Guy, a pain management specialist, on April 5, 2013, complaining of lower back pain. Dr. Guy's physical examination revealed "tenderness, spasm

and tightness present on lower back." He also observed "positive limitation of motion" and "positive muscle weakness of affected areas." His movement and muscle strength examinations revealed limitations in movement and some weakness of muscles. Dr. Guy diagnosed Plaintiff with chronic back pain.

Dr. Guy evaluated Plaintiff again on April 23, 2013, and reviewed a December 2012 MRI of her lumbar spine showing "slightly exaggerated lumbar lordosis with minimal retrolisthesis of L4 on L5," "mild degenerative changes with small bulge at T11/T12," a "possible annular tear at L4/L5" and a cyst in her left kidney. Dr. Guy's physical examination showed "no abnormal curves or pelvic obliquity" in Plaintiff's back and that Plaintiff walked with a normal gait. Strength testing of the lower extremity muscle groups revealed full strength in flexion, extension, abduction and adduction. He also observed "severe tenderness" on her back, a "severe paravertebral muscle muscular spasm," and that Plaintiff had a "decrease in sensation to pinprick and touch" on her left calf. Plaintiff's active and passive range of motion was normal but for the forward flexion of the lumbar spine, which was limited to forty-five degrees. He diagnosed her with L4-L5 lumbar disc herniation, a T12-L1 thoracic disc bulge and myofascial pain syndrome, and prescribed physical therapy. He also ordered an EMG of her lower extremities, which showed that, although her "peroneal motor nerve showed decreased conduction velocity," all her nerves were within normal limits.

Dr. Guy last consulted with Plaintiff in May 2013 and diagnosed her with a L4-L5 disc herniation, a T12-L1 disc bulge, diffuse lumbar disc desiccation and left L5 radiculopathy. His physical examination again revealed that her back showed diffuse tenderness and spasms and multiple trigger points, but that her "active range of motion and manual muscle power testing [were] normal for all four extremities." Additionally, although her sensation in her left dorsal

foot was diminished, he noted that her gait was normal. Dr. Guy continued to prescribe physical therapy.

### 2. Dr. Inocencia Carrano

Plaintiff consulted with Dr. Inocencia Carrano, a spinal specialist, on July 3, 2013. Dr. Carrano's physical examination revealed Plaintiff's spinal contour to be normal, with some tenderness and moderate limitations in flexion with "extension and left lateral bending with pain" although Plaintiff was able to "get up on [her] tiptoes and heels." Her muscle tone was normal, and she had full strength bilaterally in both her upper and lower extremities, with some individual muscles showing a strength of 3/5. Plaintiff was alert and oriented, her mood was normal, and her coordination was normal although she walked with a "stiff gait." Dr. Carrano diagnosed Plaintiff with spondylolisthesis (a condition in which one of the vertebra slips out of place onto the vertebrae below it), intervertebral disc displacement without a functional disturbance to the spinal cord, neck pain, nerve inflammation at the root of the spinal cord and carpal tunnel syndrome. She recommended physical therapy and medication.

Plaintiff visited Dr. Carrano again on August 12, 2013, with identical examination results but for improvements in bilateral range of motion in her lower extremities and the strength of Plaintiff's gluteals. Dr. Carrano no longer diagnosed Plaintiff with spondylolisthesis or carpal tunnel syndrome, but the other diagnoses remained unchanged. She also observed that Plaintiff was stronger. Dr. Carrano wrote a letter following this consultation stating that Plaintiff suffered from a permanent limitation pursuant to which "[s]he cannot lift, push or pull greater than 25 pounds. . . . She otherwise has no restrictions." The doctor continued to prescribe physical therapy and modified Plaintiff's medications.

Plaintiff visited Dr. Carrano again on September 23, 2013, and her examination revealed similar results. Dr. Carrano no longer diagnosed Plaintiff with neck pain, but continued to diagnosis Plaintiff with intervertebral disc displacement without a functional disturbance to the spinal cord and "neuritis or radiculitis thoracic or lumbosacral unspec" (i.e. some unspecified lower spine disorder). Due to Plaintiff's continued reports of pain, Dr. Carrano ordered another MRI of her lumbar spine. The MRI, conducted on October 1, 2013, revealed "[n]o significant interval change from the previous exam."

On January 21, 2014, Dr. Carrano wrote another letter after Plaintiff was terminated from her job and denied unemployment benefits, stating that Plaintiff's "job could not consistently accommodate" the restrictions necessary due to Plaintiff's "L4-5 herniation with a left L5 radiculopathy" and "this resulted in frequent absences." Dr. Carrano stated that the denial of unemployment benefits was "unjust, and [Plaintiff] should be allowed an appeal."

### 3. Dr. Iqbal Teli

Plaintiff saw Dr. Iqbal Teli on April 14, 2014 for a consultative examination following a referral by the Division of Disability Determination. His physical examination of Plaintiff revealed that Plaintiff could walk with a normal gait, but "[s]quatting is 70% due to back pain." Her stance was normal and, although Plaintiff told him that she uses a cane for balance when she goes out, he concluded that "[m]edically, she does not need it." Plaintiff needed no help changing for the exam or getting on and off the exam table, and she was able to rise from a chair without difficulty. He found that Plaintiff's "[c]ervical spine shows full flexion, extension, lateral flexion bilaterally, and full rotary movement bilaterally. . . . Lumbosacral spine extension is 25 degrees, flexion 70 degrees, lateral flexion on both sides 25 degrees, rotation full bilaterally. There is tenderness in the lower back. . . . Full [range of motion] of hips, knees, and

4

ankles bilaterally. . . . Joints stable." He also observed "[t]ouch and pain sensation are absent in the left hand and left leg. Strength 5/5 in the upper and lower extremities," and "[h]and and finger dexterity intact. Grip strength is 5/5 bilaterally." Dr. Teli concluded that Plaintiff "should avoid dust and other respiratory irritants due to history of asthma. [Plaintiff] has mild restrictions for squatting, bending, lifting, and carrying heavy weight."

### 4. Dr. Adney Nieves Mendez[1]

Plaintiff was examined by Dr. Adney Nieves Mendez, a primary care doctor, on October 1, 2015. He observed that she was "in no acute distress" and diagnosed her with hypertension, radiculopathy in the lumbar region, carpal tunnel syndrome and insomnia. His evaluation found "no deformities, no edema, [and] no erythema." Dr. Nieves examined Plaintiff again on October 13, 2015, with the same findings but for the addition of "wheezes," and diagnosed her with asthma. Dr. Nieves's evaluation on March 2, 2016 was the same, and he diagnosed her with lower back and neck pain. The fourth and final time Plaintiff visited Dr. Nieves for conditions related to her disability claim was on April 1, 2015, and Dr. Nieves's evaluation and diagnosis did not change.

### B. ALJ Proceedings

The ALJ conducted a hearing on April 20, 2016. At the hearing, Plaintiff testified that she feels "sharp pain" in her neck and cannot move her neck from side to side or up and down; that she "get[s] numb from [her] waist down" such that she can't stand up and has fallen; and that her hands go numb and she cannot hold items that are as heavy as a gallon of milk. She also testified that she has asthma, gets migraine headaches, and she is depressed. As a result of these

---

[1] The Report and the final decision of the ALJ refer to Dr. Adney Nieves Mendez as Dr. Mendez. Herein, Dr. Adney Nieves Mendez is referred to as Dr. Nieves.

conditions, Plaintiff testified that she is able to sit for only thirty minutes before feeling pain, stand for two minutes in one position before feeling that she may fall, and walk half a block before feeling pressure on her back and cramping in her calf. She also stated that she is unable to drive and needs help tying her shoes and getting in and out of a bathtub.

Carrie E. Anderson, a vocational expert, testified at the hearing that Plaintiff's prior work as an "assembler" was considered light, unskilled work, although Plaintiff's testimony that she would frequently lift boxes up to seventy pounds brought Plaintiff's specific duties into the range of light to heavy exertion. Plaintiff's counsel did not object to this conclusion. The ALJ asked Ms. Anderson to consider jobs for a hypothetical person of Plaintiff's "age, education and work experience who is able to perform light work; occasionally climb ladders, ropes or scaffolds; frequently climb ramps or stairs; stooping and crouching limited to occasional; kneeling and crawling frequent. Avoid concentrated exposure to extreme cold; avoid concentrated exposure to irritants such as fumes, odors, dust and gases." Ms. Anderson testified that such a hypothetical individual could work as a mail room clerk, a garment sorter, or a packer. Furthermore, she testified that her testimony would not change even if the following limitations applied to the hypothetical person: a need to be off task up to five percent of the day, employment at a job that is low stress with only occasional decision-making and only occasional changes in the work setting. Ms. Anderson estimated that there were 304,200 jobs nationally within these categories.

### C. ALJ Report

On July 19, 2016, the ALJ issued a decision, finding that Plaintiff is not disabled under § 216(i) and § 223(d) of the Act. In reaching this determination, the ALJ followed the five-step process outlined in the administrative guidelines to the SSA. 20 C.F.R. § 404.1520. At step one,

the ALJ concluded that Plaintiff has not engaged in substantial gainful activity since December 3, 2013, the date of the onset of her alleged disability. At step two, the ALJ found that Plaintiff suffers from "the following severe impairments: cervical and lumbar degenerative disc disease; left carpal tunnel syndrome; asthma." He also found that Plaintiff suffers from the non-severe impairments of hypertension, kidney cyst, and obesity.[2] At step three, the ALJ determined that Plaintiff's impairments are not severe enough to qualify Plaintiff as disabled. In making this determination, the ALJ afforded "considerable weight" to Dr. Teli's opinion that Plaintiff had "mild restrictions" in her "ability to squat, bend, lift, and carry heavy weights" and that "she should avoid dust and other irritants;" gave "great weight" to Dr. Carrano's opinion that Plaintiff had "permanent restrictions against lifting, pushing, or pulling more than 25 pounds;" and gave "some weight" to Dr. Carrano's opinion that Plaintiff's condition would cause her to be frequently absent from her position as an assembler. At step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform her past relevant work as an assembler "as the job is generally performed," per the testimony of the Vocational Expert that it was a light exertion position. At step five, because Plaintiff had testified that she performed her duties as an assembler at a level of heavy exertion, the ALJ also discussed other light positions available in the national economy. The ALJ found that jobs existed in significant numbers that Plaintiff could perform and concluded that Plaintiff is therefore not disabled.

**D.     Judge Pitman's Report**

On May 22, 2019, Judge Pitman issued the Report, recommending that Plaintiff's motion for summary judgment be denied, and that Defendant's motion for judgment on the pleadings be

---

[2] The ALJ described severe impairments as those that "cause more than a minimal limitation in the claimant's ability to perform work activities."

granted. As Plaintiff did not challenge the ALJ's findings at steps one, two and three, the Report assessed the ALJ's findings only at steps four and five. The Report found (1) that the ALJ's finding at step four was supported by substantial evidence and that the ALJ did not violate the treating physician rule; and (2) at step five, that Plaintiff had waived the argument that the Vocational Expert's testimony regarding the number of jobs in the national economy was "clearly erroneous," and that this testimony was also unnecessary because the ALJ had found that Plaintiff had the RFC to do her past relevant work.

### E. Plaintiff's Objections

The Objections are untimely. The final section of the Report noted "FAILURE TO OBJECT WITHIN FOURTEEN (14) DAYS **WILL** RESULT IN A WAIVER OF OBJECTIONS AND **WILL** PRECLUDE APPELLATE REVIEW." Plaintiff filed the Objections fifteen days after the Report was filed. As such, Plaintiff has waived her right to appellate review. *See United States v. Male Juvenile*, 121 F.3d 34, 38 (2d Cir. 1997) ("We have adopted the rule that failure to object timely to a magistrate judge's report may operate as a waiver of any further judicial review of the decision, as long as the parties receive clear notice of the consequences of their failure to object."); *accord Grady v. Conway*, No. 11 Civ. 7277, 2015 WL 5008463, at *3 (S.D.N.Y. Aug. 24, 2015). "[W]here no timely objection has been made, a district court need only satisfy itself that there is no clear error on the face of the record." *Niles v. O'Donnell*, No. 17 Civ. 1437, 2019 WL 1409443, at *1 (S.D.N.Y. Mar. 28, 2019).

The Objections argue that the Report exhibits clear error in concluding that the ALJ's RFC determination was supported by substantial evidence. Specifically, the Objections assert that the medical record of Dr. Guy conflicted with this determination, that the Report misrepresented the symptoms exhibited by Plaintiff in her visits to Dr. Carrano, and that the

8

Report failed to consider the treatment record of Dr. Teli and Dr. Nieves. The Objections assert that, "[c]ontrary to the Magistrate Judge's opinion, the ALJ's RFC determination is not supported by substantial evidence, as there is considerable contrary evidence that would not support the RFC determination."

## II. STANDARD

### A. Reviewing Magistrate Judge Report and Recommendations

A reviewing court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). The district court "may adopt those portions of the report to which no 'specific, written objection' is made, as long as the factual and legal bases supporting the findings and conclusions set forth in those sections are not clearly erroneous or contrary to law." *Santiago v. Berryhill*, No. 17 Civ. 5149, 2018 WL 4387554, at *4 (S.D.N.Y. Sept. 14, 2018) (quoting Fed. R. Civ. P. 72(b) and citing *Thomas v. Arn*, 474 U.S. 140, 149 (1985)).

"If a party timely objects to any portion of a magistrate judge's report and recommendation, the district court must 'make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made.'" *United States v. Romano*, 794 F.3d 317, 340 (2d Cir. 2015) (quoting 28 U.S.C. § 636(b)(1)). Even when exercising de novo review, a "district court need not . . . specifically articulate its reasons for rejecting a party's objections or for adopting a magistrate judge's report and recommendation in its entirety." *Morris v. Local 804, Int'l Bhd. of Teamsters*, 167 F. App'x. 230, 232 (2d Cir. 2006) (summary order); *accord Rose o/b/o X.G.T.A. v. Berryhill*, No. 18 Civ. 509, 2019 WL 2498279, at *2 (S.D.N.Y. June 17, 2019). As noted above, the Objections were not timely filed and are

therefore subject to review under the clear error standard. Because the Objections were filed only one day late, they are reviewed below under a de novo standard.

   B.   Reviewing ALJ Opinions

A claimant is disabled "if she is unable to . . . engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *McIntyre v. Colvin*, 758 F.3d 146, 149–50 (2d Cir. 2014) (internal quotation marks omitted); *accord Reyes v. Berryhill*, No. 17 Civ. 1851, 2018 WL 3728933, at *4 (S.D.N.Y. Aug. 6, 2018). A disability determination of the ALJ may be set aside only if "it is based upon legal error or is not supported by substantial evidence." *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999); *accord Greenhaus v. Berryhill*, No. 16 Civ. 10035, 2018 WL 1626347, at *7 (S.D.N.Y. Mar. 30, 2018). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Brault v. Soc. Sec. Admin., Com'r*, 683 F.3d 443, 447–48 (2d Cir. 2012) (internal quotation marks and citations omitted); *accord Mauro v. Berryhill*, 270 F. Supp. 3d 754, 759 (S.D.N.Y. 2017) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)), *aff'd sub nom. Mauro v. Comm'r of Soc. Sec. Admin.*, 746 F. App'x 83 (2d Cir. 2019).

The substantial evidence standard means that once an ALJ finds facts, a reviewing court can reject those facts "only if a reasonable factfinder would *have to conclude otherwise*." *Brault*, 683 F.3d at 448 (emphasis in original). The ALJ's decision need not "mention[ ] every item of testimony presented," *Mongeur v. Heckler,* 722 F.2d 1033, 1040 (2d Cir. 1983) (per curiam), or "reconcile explicitly every conflicting shred of medical testimony." *Zabala v. Astrue,* 595 F.3d 402, 410 (2d Cir. 2010); *accord Levine v. Berryhill,* No. 17 Civ. 5024, 2018 WL 4204432, at *6

10

(S.D.N.Y. Sept. 4, 2018). "Even where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings 'must be given conclusive effect' so long as they are supported by substantial evidence." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (per curiam).

## III. DISCUSSION

Plaintiff's Objection is overruled, and the Report is adopted in its entirety.

### A. Residual Functional Capacity Analysis

On a de novo review, the RFC determination was supported by substantial evidence. The ALJ found that Plaintiff had the RFC

> to perform light work as defined in 20 CFR 404.1567(b)[3] except that she can frequently climb ramps and stairs, but only occasionally climb ladders, ropes, or scaffolds. The claimant can kneel and crawl, but only occasionally stoop and crouch. She should avoid concentrated exposure to extreme cold and irritants such as fumes, odors, dust and gases.

Plaintiff objected generally to the Report's conclusion that the ALJ's determination of Plaintiff's RFC was supported by substantial evidence citing "considerable contrary evidence." Plaintiff's objection is unpersuasive.

First, Plaintiff objects to the characterization of Dr. Guy's finding in the Report that Plaintiff "exhibits only slightly diminished range of motion and consistently exhibited full muscle strength and normal reflexes," and identifies additional findings that allegedly conflict

---

[3] 20 CFR 404.1567(b) provides, "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time."

11

with that characterization. Plaintiff's objection is unfounded. Dr. Guy's records show that, although Dr. Guy found limitations in Plaintiff's range of motion to some extent in his April 5, 2013 and April 23, 2013 examinations, his May 2013 examination showed that her "active range of motion and manual muscle power testing were normal in all four extremities." Based on these findings, a reasonable fact finder would not "have to conclude" that Plaintiff was unable to do light work as defined in 20 CFR 404.1567(b). *Brault,* 683 F.3d at 448.

Second, Plaintiff objects to the Report's statement that, in her visits to Dr. Carrano in 2013, Plaintiff "exhibited full muscle strength, normal reflexes, normal coordination, and only 'moderate' range of motion limitations in her lumbar spine." Plaintiff argues that the Report failed to consider Dr. Carrano's diagnosis of Plaintiff's L4-L5 herniated disc "with permanent neurological damage with weakness and sensory changes." This argument is unpersuasive because the ALJ gave "great weight" to Dr. Carrano's recommendation that Plaintiff not lift, push or pull greater than 25 pounds, and this recommendation is consistent with the criteria applicable to light work, which "involves lifting no more than 20 pounds at a time." 20 CFR 404.1567(b). Moreover, Dr. Carrano specifically stated that, beyond being unable to lift, push or pull greater than 25 pounds, "[Plaintiff] has no restrictions." This is "relevant evidence [that] a reasonable mind might accept as adequate to support" the ALJ's conclusion that Plaintiff can engage in light work. *See Brault*, 683 F.3d at 447–48.

Finally, Plaintiff objects that the Report "failed to consider the treatment records of other physicians" and notes that "Dr. Teli registered a decreased range of motion in Plaintiff's lumbosacral spine, with tenderness in the lower back," and "Dr. [Nieves] diagnosed Plaintiff with hypertension, radiculopathy of the lumbar region, and carpal tunnel syndrome." This argument is also unpersuasive. The ALJ gave "considerable weight" to Dr. Teli's conclusion

12

that Plaintiff "has mild restrictions for squatting, bending, lifting, and a carrying heavy weight." These restrictions are not inconsistent with the ALJ's RFC determination that Plaintiff can "frequently climb ramps and stairs, but only occasionally climb ladders, ropes, or scaffolds" and "can kneel and crawl, but only occasionally stoop and crouch." Finally, nothing in Dr. Nieves's records shows that Plaintiff was unable to perform light work.

When taken as a whole, substantial evidence supports the ALJ's conclusion that Plaintiff can do light work with certain restrictions. None of the doctors who examined Plaintiff found that Plaintiff had any trouble walking: Dr. Guy noted her "gait was normal"; Dr. Carrano found that her "coordination was normal" although she had a "stiff gait"; Dr. Teli found that Plaintiff could walk with a "normal gait," had no medical need for a cane, needed no help changing for the exam or getting on or off the exam table, and that she was able to rise from a chair without difficulty; and Dr. Nieves consistently noted she was in "no acute distress." The examinations also did not reveal significant limitations on range of motion or severe muscle weakness: at her last appointment, Dr. Guy found that Plaintiff's "active range of motion and manual muscle power were normal in all four extremities"; Dr. Carrano found that Plaintiff's "muscle tone was normal, and her strength was 5/5 bilaterally in both her upper and lower extremities" with some individual muscles showing moderate weakness; and Dr. Teli found full bilateral range of motion of hips, knees and ankles, strength 5/5 in the upper and lower extremities, hand and finger dexterity intact and 5/5 grip strength, with some moderate limitations in flexion. Plaintiff's MRIs "indicated that she had a mild degenerative changes in her spine and two small disc herniations, but no spinal canal stenosis or nerve root compression." Finally, the ALJ integrated into his final determination each of the doctors' recommended limitations, including Dr. Carrano's opinion that Plaintiff "cannot lift, push or pull greater than 25 pounds" and Dr. Teli's

opinion that Plaintiff "has mild restrictions for squatting, bending, lifting, and a carrying heavy weight," as well as Dr. Nieves's diagnosis of asthma.

In light of this record, it cannot be said that a reasonable fact finder would "have to conclude" that the ALJ's finding on Plaintiff's RFC was incorrect. *Brault,* 683 F.3d at 448 ("The substantial evidence standard means once an ALJ finds facts, a reviewing court can reject those facts 'only if a reasonable factfinder would *have to conclude otherwise.*'") Ultimately, "[e]ven where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings 'must be given conclusive effect' so long as they are supported by substantial evidence." *Genier*, 606 F.3d at 49 (quoting *Schauer v. Schweiker,* 675 F.2d 55, 57 (2d Cir.1982)). Here, there is substantial evidence supporting the ALJ's RFC determination, and the Objections are overruled.

### B. Remainder of the Report as to which No Objection was Made

The Objection does not address the remainder of the Report. Having reviewed the remainder of the Report, the Court finds that the factual and legal bases supporting its findings and conclusions are not clearly erroneous or contrary to law. Accordingly, the Court adopts the remainder of the Report.

## IV. CONCLUSION

The ALJ's RFC determination is supported by substantial evidence, and the Report's factual findings and legal conclusions are not clearly erroneous or contrary to law. Accordingly, the Report is ADOPTED in its entirety as the decision of the Court. Plaintiff's motion for summary judgment is DENIED. The Commissioner's cross-motion for judgement on the pleadings is GRANTED. The Complaint is dismissed.

The Clerk of Court is respectfully requested to close the motions at Docket Nos. 9 and 15 and close the case.

Dated: October 15, 2019
       New York, New York

                                          **LORNA G. SCHOFIELD**
                                        **UNITED STATES DISTRICT JUDGE**